ORIGINAL

FILED IN CHAMBERS
U.S.D.C. – Rome

AUG 29 2019

JAMES N. HATTEN, Clerk
By: _Kari Britt_

AO 93 (GAN 6/10) Search Warrant

# United States District Court

NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

The Gray IPhone cellphone sealed inside DEA evidence bag
#S001094102

**APPLICATION AND
AFFIDAVIT FOR
SEARCH WARRANT**
Case number: 4:19-MC-52

I, Kirk F. Williamson, being duly sworn depose and say:

I am a Special Agent of the Drug Enforcement Administration and have reason to believe that in the
property described as:

The Gray IPhone cellphone sealed inside DEA evidence bag #S001094102

in the Northern District of Georgia there is now concealed certain information and certain data, namely,

contact information, call log information, photographs, messages and electronic
communications, GPS entries, and other electronic data as fully described in Attachment
A, which is incorporated herein,

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and
property designed for use, intended for use, or used in committing a crime, concerning violations of Title
21, United States Code, Section(s) 841(a) and Title 21, United States Code, Section(s) 846. The facts to
support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT INCORPORATED BY REFERENCE

Continued on attached sheet made a part hereof.

Sworn to before me, and subscribed in my
presence

_____
Signature of Affiant

Kirk F. Williamson

August 29, 2019
Date

Rome, Georgia
City and States

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
SAUSA Valerie M Verduce

_____
Signature of Judicial Officer

## Affidavit In Support Of Search Warrant

I, Kirk F. Williamson, Special Agent with the Drug Enforcement Administration ("DEA"), being duly sworn, hereby state that the following is true and correct to the best of my knowledge and belief:

1.      This affidavit is submitted in support of an application for a search warrant for the following cell phone seized on August 22, 2019, from 30 Benedict Loop, Cedartown, Georgia and stored in the DEA Atlanta Division Office located at 75 Ted Turner Drive, Atlanta, Georgia.

**SUBJECT TELEPHONE:** a grey IPhone cellphone sealed inside DEA evidence bag #S001094102.

2.      Based on my training and experience, I know that the **SUBJECT TELEPHONE** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **SUBJECT TELEPHONE** first came into the possession of the DEA.

3.      The **SUBJECT TELEPHONE** was obtained pursuant to a federal search warrant on August 22, 2019, at 30 Benedict Loop, Cedartown, Georgia.

4.      The **SUBJECT TELEPHONE** is presently in the possession of DEA agents in the Atlanta Field Division at 75 Ted Turner Drive, Atlanta, GA.

5.      I seek authorization for a forensic examination/search of the **SUBJECT TELEPHONE** for the purpose of retrieving electronically stored data particularly described in **Attachment A**.

6.      Based on my training and experience and the facts set forth in this affidavit, I submit there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a) and 846, have been committed, and that there is now stored in the **SUBJECT TELEPHONE**

evidence of these crimes, as set forth in **Attachment A**, and that the **SUBJECT TELEPHONE** constitutes property designed for use, intended for use, or used in committing said crimes.

**<u>Introduction and Agent Background</u>**

7.      I am a Drug Enforcement Administration Special Agent currently assigned to the DEA's Atlanta Division (DEA Atlanta). I have been a Special Agent since July 2009. In connection with my official duties as a DEA Special Agent, I am responsible for conducting investigations into violations of Title 21 of the United States Code and other federal criminal statutes.

8.      In connection with my official DEA duties, I investigate criminal violations of state and federal drug laws and related offenses, including, but not limited to, violations of Title 21, United States Code, §§ 841, 843, 846, 848, 856, 952, 960, and 963, and Title 18, United States Code, §§ 1956 and 1957.

9.      During my employment with the DEA, I have been active in investigations involving narcotics trafficking and distribution and money laundering. I have received training on the subject of narcotics trafficking and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. Further, I have participated in wiretap investigations that resulted in a number of arrests and seizures concerning drug trafficking and money laundering. During the course of these investigations, it was apparent that drug traffickers were using telephones in furtherance of their illegal activities. In addition, I have also analyzed telephone toll records and other records and debriefed informants regarding the use of telephones.

10.     Based upon my training, experience, and participation in other narcotics investigations, my accumulated knowledge from consultations with other law enforcement agents, and my debriefings of narcotics offenders, I know the following:

    a.   Drug traffickers often cooperate and associate with a number of people involved in their illegal drug trafficking activity. As a result of the association and cooperation, the drug traffickers often possess documents and other items, including electronic devices, that identify other members of a drug trafficking organization. Drug traffickers commonly maintain addresses or telephone numbers of their criminal associates in phones, address books, journals, computer files or other types of papers, even if said items may be in code. Drug dealers keep such information readily available so that they may transact narcotics business quickly and, also, so that they may be in constant contact should questions or difficulties arise in the course of their illegal endeavors. Additionally, I know that the nature of the drug business frequently necessitates that a drug trafficker's criminal associates change locations and contact phone numbers. Therefore, in order to keep up with those associates, it is necessary to keep accurate records of each individual's contact phones and addresses.

    b.   Drug traffickers will often subscribe to various communication services in alias names in an attempt to thwart law enforcement efforts to identify traffickers. Drug traffickers will often store their associates' contact information in phones and index such information to nicknames or other aliases instead of true name.

    c.   With the advancement of technology, drug traffickers commonly use multiple SIM cards, mobile or cellular telephones, smart phones (including Android and iOS based devices), and other electronic devices, as well as regular telephones, to conduct their drug trafficking business. These items are often kept where traffickers have ready access to them, including on their person, in their vehicles, and in their residences. These devices commonly contain information related to the drug trafficking activities, including telephone numbers of their criminal associates, voice and text or other electronic messages with their criminal associates, and photographs of criminal activities, including photographs of drugs.

    d.   Drug traffickers utilize cell phones, computers, and other electronic media devices to coordinate the purchase/sale/distribution of narcotics. Drug traffickers regularly pose for photographs while in possession of firearms and narcotics for posting on social media sites or for personal display in their residences.

### Sources of Information

11.     I make this affidavit based upon personal knowledge derived from my participation in this investigation and information I have learned from discussions with other law enforcement

investigators and agents, including information provided to them by confidential sources of information, defendants, and witnesses, as well as from my review of written reports prepared by other law enforcement officers who have and are participating in this investigation.

12.     Because this affidavit is being submitted for the limited purpose of seeking authorization to search the **SUBJECT TELEPHONE**, I have not set forth each and every fact learned during the course of the investigation. Facts not set forth herein are not being relied upon in reaching my conclusion that an order should be issued, nor do I request that the Court rely upon any facts not set forth herein in reviewing this affidavit. Whenever in this affidavit I state a belief, it is based upon my training and experience, as well as information obtained during this investigation. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

<u>**Probable Cause**</u>

13.     On or about August 19, 2019 DEA Atlanta obtained intelligence that MONTEMAYOR-SOTO was a suspected Fentanyl pill distributor in the Atlanta area. At approximately 5:30 p.m., SA José Collazo, acting in an undercover capacity, placed a recorded telephone call to cellphone number (706-676-3910), known to be used by MONTEMAYOR-SOTO, in order to request a Fentanyl pill sample. SA Collazo started the conversation with a passcode he knew to use, "de parte del Tio para las pildoras" (on behalf of Tio for the pills). SA Collazo then said that he was interested in buying fentanyl pills and asked MONTEMAYOR-SOTO if it was possible for MONTEMAYOR-SOTO to provide a sample. MONTEMAYOR-SOTO accepted SA Collazo request and agreed to meet SA Collazo the next day in Cartersville, GA.

4

14.     On August 20, 2019, DEA agents established surveillance at the personal residence of MONTEMAYOR-SOTO. Once surveillance was established, at approximately 2:00 p.m., SA Collazo called MONTEMAYOR-SOTO through the cellphone number used the previous day and provided a specific location for the meeting. MONTEMAYOR-SOTO told SA Collazo that he (MONTEMAYOR-SOTO) was 50 minutes away from the meeting location. Soon after, agents observed MONTEMAYOR-SOTO leave his personal residence, driving a Red Honda Accord.

15.     Agents maintained surveillance on MONTEMAYOR-SOTO as he drove from his residence to the Cartersville address provided by SA Collazo. At approximately 3:01 p.m., MONTEMAYOR-SOTO called SA Collazo and said that he had arrived at the meeting location (Kroger: 125 E Main St, Cartersville, GA). SA Collazo directed MONTEMAYOR-SOTO to where SA Collazo was parked, and SA Collazo exited his vehicle to walk to the driver's side of the red Honda Accord that MONTEMAYOR-SOTO was driving. MONTEMAYOR-SOTO then handed SA Collazo two small, clear zip bags through the driver's side window of the red Honda Accord. The first bag contained six (6) round blue pills. The second bag contained a small brown-like substance. The exterior of the small, clear bags contained the words" daily dose pill pouch." MONTEMAYOR-SOTO told SA Collazo that the pills were laced with Fentanyl. MONTEMAYOR-SOTO also told SA Collazo that MONTEMAYOR-SOTO had more drugs here in Georgia that were available for purchase. A subsequent drug field test of the pills tested positive for methamphetamine. The brown-like substance tested positive for heroin.

16.     Based in part on these facts, a search warrant was issued for MONTEMAYOR-SOTO's residence, located at 30 Benedict Loop, Cedartown, Georgia (Search Warrant, Case Number 4:19-MJ-50). On August 22, 2019, at approximately 6:15am, DEA Atlanta Special Agents and Task Force Officers, executed the search warrant at that residence.

17.     A search of MONTEMAYOR-SOTO's residence uncovered the following:

a.   One large and many small clear zip bags containing round blue pills located in a closet of the bedroom where MONTEMAYOR-SOTO was sleeping when agents arrived, and inside a locked gun safe located in the closet of the bedroom where MONTEMAYOR-SOTO was sleeping when agents arrived, and which was opened with the assistance of MONTEMAYOR-SOTO. There were approximately 2,540 pills in total. A sample of the round blue pills have field tested positive for methamphetamine. The round blue pills are of the same size, shape and appearance as those MONTEMAYOR-SOTO handed to SA Collazo on August 20, 2019 and that also tested positive for methamphetamine. Like the exterior of the small bags, the exterior of the small, clear zip bags located in MONTEMAYOR-SOTO's master bedroom contained the words "daily dose pill pouch."

b.   Three large, zip bags, which contained two kilograms or more of a  brown-like substance, some of which appeared to be the same as the brown-like substance MONTEMAYOR-SOTO handed to SA Collazo on August 20, 2019 and that subsequently tested positive for heroin. A sample of the brown-like substance uncovered in MONTEMAYOR-SOTO's residence field tests positive for opiates.[1]

c.   The **SUBJECT TELEPHONE** located on top of a dresser in the master bedroom where MONTEMAYOR-SOTO was sleeping at the execution of the search warrant, and in the same bedroom where the round blue pills that tested positive for methamphetamine were found. During the search warrant, agents called the cellphone number SA Collazo used to speak with MONTEMAYOR-SOTO and to

---

[1] A heroin-specific test was not employed at the time, but further testing of the brown-like substance is underway.

arrange the drug transaction, 706-676-3910. When the number was called, the **SUBJECT TELEPHONE** located on the dresser of MONTEMAYOR-SOTO's master bedroom rang.

18.     Based on the foregoing, I respectfully submit that there is probable cause to believe the defendant, Julio MONTEMAYOR-SOTO did knowingly and intentionally possess with the intent to distribute controlled substances, in violation of Title 21 United States Code, Section 841(a)(1).

19.     Based on the evidence obtained from the search warrant, the proximity to drugs in the residence, the use of the SUBJECT TELEPHONE by MONTEMAYOR-SOTO to arrange a drug transaction, and the prevalence of drug traffickers using phones for their trafficking activities, I submit there is probable cause to believe the **SUBJECT TELEPHONE** has been used to facilitate drug trafficking activities.

20.     Based on the evidence obtained at the residence, agents believe MONTEMAYOR-SOTO has been trafficking drugs for some time – it is highly unlikely that his first involvement with drugs involves thousands of round blue pills containing methamphetamine and two kilograms or more of a brown-like substance containing opiates.  Therefore, agents request to conduct a search of the **SUBJECT TELEPHONE** as far back as August 9, 2019 in order to obtain additional evidence of his trafficking activities, identities of conspirators, and evidence of user attribution. This time period includes the ten (10) days prior to Agent Collazo's undercover call to MONTEMAYOR-SOTO through the **SUBJECT TELEPHONE** to purchase drugs, which will further assist agents in determining the source of the drugs MONTEMAYOR-SOTO provided to Collazo and the source of the drugs that were subsequently found in MONTEMAYOR-SOTO's residence.

### Information about Telephones

21.     Based on my knowledge, training, experience, and research, I know that the **SUBJECT TELEPHONE** may have capabilities that allows it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and/or Personal Digital Assistant. In my training and experience, examining data stored on devices of this type can reveal, among other things, evidence identifying the person(s) who possessed or used the device.  I know that electronic devices such as the **SUBJECT TELEPHONE** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

22.     *Forensic evidence.*  As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT TELEPHONE** was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT TELEPHONE** because:

      a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.  Forensic evidence on the **SUBJECT TELEPHONE** can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

      c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT TELEPHONE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24.    *Manner of execution.* Because this warrant seeks only permission to examine the **SUBJECT TELEPHONE** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

25.     Based on the above-stated facts, I submit that this affidavit supports probable cause for a search warrant authorizing the forensic examination/search of the **SUBJECT TELEPHONE**, which are property designed for use, intended for use, or used in committing the criminal violations described herein, certain information and data described in **Attachment A**, which are evidence of violations of Title 21, United States Code, Sections 841(a) and 846.

*** 

10

**ATTACHMENT A**

The particular items to be seized from the SUBJECT TELEPHONE, for the dates of August 9, 2019, through the present, are as follows:

     1.    All records on the SUBJECT TELEPHONES that relate to violations of Title 21 USC 841(a) and 846 (distribution of a controlled substance and conspiracy to distribute a controlled substance), or are evidence of user attribution showing who used or owned the SUBJECT TELEPHONES, including:

    a.  Contact information to include names, addresses, telephone numbers, email addresses, or other identifiers;

    b.  Call log information, including missed, incoming and outgoing calls and any information associated with those numbers;

    c.  Any photographs, video and audio files;

    d.  Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications;

    e.  Any calendar, notes, password and/or dictionary entries;

    f.  Any Global Positioning Satellite (GPS) entries, records of Internet Protocol Connections, and location entries to include cell tower and WiFi entries;

    g.  Any internet or browser entries or history;

    h.  Any system, data or configuration information contained within the device.